STATE OF NORTH CAROLINA v. JAMES HUDSON

No. 18

(Filed 14 July 1978)

1. **Criminal Law § 21.1— preliminary hearing—purpose**

Discovery is not the purpose of a probable cause hearing, though such hearing may provide defendant an opportunity to discover the strengths and weaknesses of the State's case; rather, the function of a probable cause hearing is to determine whether there is probable cause to believe that a crime has been committed and that defendant committed it. G.S. 15A-611(b).

2. **Criminal Law § 21.1— no preliminary hearing—no grounds for dismissal**

The trial judge correctly denied defendant's motion to dismiss made on the ground that he was denied a preliminary hearing, since probable cause that a crime was committed and that defendant committed it was twice established, once by the magistrate issuing the arrest warrants, and again by the grand jury which returned indictments against defendant; and defendant failed to carry the burden of showing a reasonable possibility that a different result would have been reached in this trial had he been given a preliminary hearing. G.S. 15A-1443.

3. **Constitutional Law § 50— speedy trial—relevant factors**

Factors to be considered in deciding whether a defendant has been denied his right to a speedy trial are the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and prejudice to defendant resulting from the delay.

4. **Constitutional Law § 51— five months between arrest and trial—no denial of speedy trial**

Defendant was not prejudiced by a five month delay between his arrest and trial, since such delay was not so inordinately long as to give rise to a presumption that the State was guilty of bad faith and deliberate efforts to hamper defendant's defense; defendant failed to file a petition for speedy trial until eleven weeks after he could have done so; defendant presented no evidence that the delay of his trial caused him to lose possible witnesses or resulted in the loss of material information; and there was no evidence to show that the delay was due to the neglect or wilfulness of the prosecution or resulted from arbitrary or oppressive action on the part of the prosecution.

**5. Criminal Law § 66— in-court identification excluded—testimony as to skin color admissible**

Where the trial court conducted a voir dire hearing and excluded in-court identification testimony offered through a particular witness, it was not error for the court subsequently to permit the witness to testify as to the color of the skin of the man the witness saw fleeing from the crime scene.

**6. Criminal Law § 99.6— trial court's questioning of witnesses—no expression of opinion**

The trial court did not express an opinion in violation of G.S. 1-180 by asking the State's witness a number of questions since the questions either requested the witness to repeat a portion of his testimony or sought affirmation by the witness of the court's understanding of the witness's answer, and the trial judge could not hear the witness's answers and asked the questions in order that the court and jury might better understand the witness's testimony.

**7. Criminal Law § 102.6— district attorney's jury argument—no impropriety**

Comments by the district attorney in his jury argument with respect to the character of defendant's witnesses and defendant and with respect to ownership of a gun not introduced into evidence were based upon the evidence presented and were within the recognized bounds of propriety.

APPEAL by defendant from *Snepp, J.,* 15 August 1977 Criminal Session of IREDELL Superior Court.

Defendant was tried upon indictments, proper in form, charging him with armed robbery and first degree murder. Upon arraignment, defendant entered a plea of not guilty to each charge.

The State's evidence tends to show that at about 6:00 p.m. on 29 June 1972, Bob Cavin arrived at Lineberger's Service Station and Grocery Store located west of Mooresville, North Carolina. He observed a black man running out of the store. The man was wearing a plaid shirt, dungarees and a hat and was carrying a wallet in his hand. The man ran to a light blue Ford pickup truck, parked nearby, which was occupied by two other black men. The truck left the area at a high rate of speed. Mr. Cavin then went into the store where he found Lathan Lineberger, who was bleeding from a neck wound.

The State also offered evidence tending to show that a large amount of money was missing from the store and that Lathan Lineberger died as a result of a gunshot wound to the neck.

The State's primary witness was James Garris, a confessed accomplice in the crimes for which defendant was tried. Garris

testified that he, Earl Mackie, David Linder and defendant had all participated in the robbery. According to Garris, Linder had remained at another location while the other three men proceeded to the store. Mackie was armed with a .12 gauge shotgun while Garris and defendant were armed with pistols. After Mackie and defendant entered the store, Garris, who had remained in the pickup truck, heard Mr. Lineberger "begging to give up" and thereafter heard one shot. Mackie ran out of the store, carrying a .38 caliber pistol which he did not have when he first went inside. Garris further testified that as defendant ran out of the store a light colored car pulled up behind the truck. He stated that his share of the money taken was $60.00.

Upon cross-examination, Garris admitted that in return for his testimony he had been promised immunity from prosecution for his involvement in this and other crimes. It was stipulated that the witness had implicated two individuals in two other related crimes who were either dead or in prison at the time he said they joined him in the perpetration of those crimes.

David Linder, one of the men implicated by Garris as involved in the crimes in instant case, testified for defendant. Linder admitted knowing Mackie and Garris but denied having ever seen defendant before or being involved in the murder of Lathan Lineberger. Defendant testified on his own behalf. He denied knowing both Mackie and Linder and denied any involvement in the crimes for which he was being tried. Defendant also introduced the testimony of Mason White and Robert Williamson, both of whom had met Garris in the Iredell County jail. According to White, Garris had told him that the police wanted him (Garris) to "cop out" to a murder and robbery which he knew nothing about and further Garris wanted to know where Linberger's Store was. Williamson also testified that Garris had asked him about the location of the Linberger Store and that Garris had denied any knowledge of the robbery and murder.

In rebuttal, Garris testified that he had never talked with White and Williamson.

The jury returned verdicts of guilty of armed robbery and guilty of first degree murder. Defendant was sentenced to life imprisonment upon verdict of first degree murder, and the trial

court arrested judgment upon the verdict for armed robbery, the State having proceeded under the felony murder rule.

Other facts necessary to decision are set forth in the opinion.

*Rufus L. Edmisten, Attorney General, by Norma S. Harrell, Associate Attorney, for the State.*

*C. David Benbow, for defendant appellant.*

BRANCH, Justice.

Defendant assigns as error the failure of the trial court to allow his motion to dismiss on the ground that he had been denied a probable cause hearing.

After defendant's arrest on 4 March 1977, a probable cause hearing was scheduled to be held on 24 March 1977. The State was granted a one week continuance over defendant's objection, and on 31 March 1977, the prosecution informed defendant that the case would be bound over to superior court and there would be no probable cause hearing. On 16 May 1977, the grand jury returned true bills of indictment upon which defendant was tried. Defendant contends that the State deliberately prevented him from having a probable cause hearing thereby depriving him of a valuable tool of discovery.

[1] A probable cause hearing may afford the opportunity for a defendant to discover the strengths and weaknesses of the State's case. However, discovery is not the purpose for such a hearing. The function of a probable cause hearing is to determine whether there is probable cause to believe that a crime has been committed and that the defendant committed it. G.S. 15A-611(b). *See also, Vance v. North Carolina,* 432 F. 2d 984 (4th Cir. 1970). The establishment of probable cause ensures that a defendant will not be unjustifiably put to the trouble and expense of trial. *Carroll v. Turner,* 262 F. Supp. 486 (E.D.N.C. 1965).

[2] In the case *sub judice,* probable cause that a crime was committed and that defendant committed it was twice established. Defendant was arrested upon warrants, and the magistrate issuing these warrants was required by statute to first determine the existence of probable cause. G.S. 15A-304(d). Further, defendant was tried upon indictments returned by a grand jury and that

body had the function of determining the existence of probable cause. G.S. 15A-628; *Beavers v. Henkel,* 194 U.S. 73, 48 L.Ed. 882, 24 S.Ct. 605 (1904); *U.S. v. Atlantic Commission Co.,* 45 F. Supp. 187 (E.D.N.C. 1942).

There is no constitutional requirement for a preliminary hearing, and it is well settled that there is no necessity for a preliminary hearing after a grand jury returns a bill of indictment. *State v. Lester,* 294 N.C. 220, 240 S.E. 2d 391 (1978); *State v. Foster,* 282 N.C. 189, 192 S.E. 2d 320 (1972).

We are aware of the provisions of G.S. 15A-605 which provide, in part, that the judge must schedule a preliminary hearing unless the defendant waives in writing his right to such a hearing and absent such waiver the district court judge must schedule a hearing not later than fifteen working days following the initial appearance before him. We are also aware of the provisions of G.S. 15A-1443 which apparently codifies existing case law. We quote a portion of that statute:

> (a) A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

Here defendant has failed to carry the burden of showing a reasonable possibility that a different result would have been reached in this trial had he been given a preliminary hearing. In fact, he introduced no evidence to support this assignment of error except the record evidence as to the length of delay. We, therefore, hold that the trial judge correctly denied defendant's motion to dismiss on the ground that he was denied a preliminary hearing.

By his second assignment of error, defendant contends that his motion to dismiss should have been granted because he was denied his right to a speedy trial.

[3]   Factors to be considered in deciding whether a defendant has been denied his right to a speedy trial are: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182 (1972); *State v. McKoy*, 294 N.C. 134, 240 S.E. 2d 383 (1978); *State v. Wright*, 290 N.C. 45, 224 S.E. 2d 624 (1976). The length of delay is not in itself determinative of the question of whether an accused has been denied a speedy trial, and all the factors above set forth must be weighed and balanced against each other in determining whether there was been a denial of a speedy trial. Undue delay which is arbitrary, oppressive or due to the prosecution's deliberate effort to hamper the defense violates the constitutional guarantee of a speedy trial. *Barker v. Wingo, supra; State v. Smith*, 289 N.C. 143, 221 S.E. 2d 247 (1976).

[4]   Here defendant was arrested on 4 March 1977 and tried at the 15 August 1977 Session of Iredell Superior Court. He filed a petition to dismiss because of denial of a speedy trial on 24 June 1977, sixteen weeks after his arrest and incarceration. The record discloses that there was only one term of criminal court in Iredell County after defendant filed his petition and before his trial at the August, 1977, term of Iredell Superior Court. Some degree of delay is of necessity inherent in every criminal trial, and the delay in instant case is not so inordinately long as to give rise to a presumption that the State was guilty of bad faith and deliberate efforts to hamper defendant's defense. Further, while this record does not disclose that defendant affirmatively waived his right to a speedy trial, his action in failing to file a petition for speedy trial until eleven weeks after he could have done so is a circumstance which may be considered in determining whether his right to a speedy trial has been denied. *Barker v. Wingo, supra.*

The most serious prejudice which can result from denial of a speedy trial is impairment of an accused's ability to prepare his defense. *Barker v. Wingo, supra.* In this connection, defendant has presented no evidence that the delay of his trial caused him to lose possible witnesses or resulted in the loss of material information. Neither has he offered evidence to show that the delay

was due to the neglect or wilfulness of the prosecution or resulted from arbitrary or oppressive action on the part of the prosecution.

We conclude that the delay in instant case, which was neither unreasonable nor prejudicial to defendant, did not result in the denial of a speedy trial.

Defendant's assignment of error that the trial court erred by refusing to allow defense counsel to examine ten photographs, later introduced as State's Exhibits 2 through 11, while they were being identified by the State's witness is without merit. The record clearly shows that before the photographs were introduced into evidence and before they were displayed to the jury, defense counsel was given adequate opportunity to examine them and to lodge any objections he might have. Under these circumstances, failure to allow defense counsel to examine the photographs while they were being identified by the witness in no way prejudiced defendant.

[5]   Defendant assigns as error the trial judge's ruling which permitted the State's witness, Bob Cavin, to testify that on 29 June 1972, he saw a black man dressed in dungarees and a plaid shirt and carrying a wallet flee from Lineberger's store. The trial judge had previously conducted a *voir dire* hearing and excluded in-court identification testimony offered through the witness Cavin. The described clothing was never connected to defendant in any way. However, defendant argues that because he is a black man, this was also identification evidence which should have been excluded. We do not agree.

It is well established that a witness may testify to facts which are within his own personal knowledge, and particularly so with regard to what the witness may have actually seen. *See*, 81 Am. Jur. 2d, *Witnesses,* Sections 75, 76 (1976); 1 Stansbury's North Carolina Evidence, Section 122 (Brandis Rev. 1973).

Obviously, it is possible for a witness to observe the color of a person's skin without being able to make a positive in-court identification of that person. Here the trial judge conducted a *voir dire* hearing and heard the testimony as to the witness's opportunity and ability to observe the fleeing man. Without reciting that testimony, we think it sufficient to say that there was ample

---

**State v. Hudson**

---

evidence to support the trial judge's ruling excluding the in-court identification testimony and his later ruling which permitted the witness to testify as to the color of the skin of the fleeing man. There was no error in the admission of this testimony.

[6] Defendant next contends that the trial judge expressed an opinion in violation of G.S. 1-180 by asking the State's witness, James Garris, a series of questions. The following exchanges are illustrative of the questions of which defendant complains:

Q. Who was with you the third time you came to Lineberger's Store?

A. The third time Mackie, Linder and Hudson.

Q. Mackie, Linder and Hudson?

A. Yes, sir.

COURT: Mr. who?

A. Hudson.

\*     \*     \*

Q. What happened?

A. I can't describe exactly what happened; all I know, I could hear a noise like fighting, I could hear — during the fight —

COURT: The jury can't hear you.

\*     \*     \*

Q. Can you tell us whether or not you could see through the window at that point?

A. I could see through it, but couldn't see clearly. I could see movement in the store.

COURT: See what?

A. See movement in the store. I could see movement, people moving around.

Defendant argues that these and other questions tended to unduly emphasize the witness's testimony and were also prejudicial by virtue of their content and frequency.

It is well settled that a trial judge may not express an opinion as to the guilt or innocence of a criminal defendant, the

credibility of a witness, or any other matter which lies in the province of the jury. G.S. 1-180; *State v. Freeman*, 280 N.C. 622, 187 S.E. 2d 59 (1972); *State v. Owenby*, 226 N.C. 521, 39 S.E. 2d 378 (1946). An expression of judicial leaning is absolutely prohibited regardless of the manner in which it is expressed, and this is so even when such expression of opinion is inadvertent. *State v. Atkinson*, 278 N.C. 168, 179 S.E. 2d 410 (1971). However, it is equally well settled that the trial judge controls the course of the trial and may direct questions to a witness which are designed to clarify or promote a better understanding of his testimony. *State v. Freeman, supra; State v. Colson*, 274 N.C. 295, 163 S.E. 2d 376 (1968), *cert. denied*, 393 U.S. 1087 (1969).

Careful examination of the questions here challenged discloses that each of them either requested the witness to repeat a portion of his testimony or sought affirmation by the witness of the court's understanding of the witness's answer. We conclude that the trial judge could not hear the witness's answers and asked the questions in order that the court and jury might better understand the witness's testimony.

We find nothing in any of the questions excepted to which would indicate that a juror could have reasonably inferred from any one of the questions, or from all them, that the trial judge expressed an opinion as to the credibility of the witness or as to the guilt or innocence of defendant. This assignment of error is overruled.

[7] By his remaining five assignments of error, defendant contends that the district attorney's closing argument was so improper, inflammatory and prejudicial that it denied defendant a fair and impartial trial. Examples of some of the portions of the district attorney's argument to which defendant excepted are as follows:

> As [defense counsel] says, if you are going to try the devil, you have got to go to hell to get your witnesses. I'm not going to tell you Garris is any Sunday School teacher — he has been into plenty. That doesn't make any difference whether or not you believe what he has had to say about what happened June 29, 1972, down at Lineberger's Store in Mooresville.

*   *   *

I stand here and argue to you and [defense counsel] stands here for that man who is young; I say to you who is wicked, and who participated in the armed robbery and killing of a middle aged man. . . . James Hudson, the defendant seated over there with a shirt and tie on, look at him — he is mean — he is mean because of June 29, 1972 — he participated in a killing and has the audacity, even though he has the right, to come in and say "No I didn't — prove it on me." . . .

\* \* \*

You heard Garris say he got his pistol from Mackie as part of the proceeds, this very pistol. Now [defense counsel] said, "We don't know whose pistol" — let me tell you, law is common sense. . . . Now, if Mackie went into the station carrying a shotgun, that was all he had, and came out carrying a gun, I want to ask you whose gun this is. The State didn't offer this gun into evidence because the gun was obtained from a woman who was not in court; we couldn't offer it into evidence, but [defense counsel] didn't catch that either. . . . Now, the State said that this is Lathan Lineberger's gun. It was taken by Mackie, brought out of the store, Mackie gave it to Garris, Garris sold it to Lewis, Lewis, in jail, gave it to his wife, Cook got it from his wife. If I had to prove that about his wife, I didn't have her either, but [defense counsel] helped me prove it.

Defendant made no objections to the argument of the district attorney prior to the coming in of the verdicts.

Ordinarily, objections to argument of opposing counsel must be made at trial in order to give the trial judge an opportunity to stop the improper argument and to instruct the jury to disregard the prejudicial material. Nevertheless, we recognize that in capital cases, we may review the prosecution's argument even when timely objection to the argument is not made at trial. Even so, the impropriety of the argument must be flagrant in order for us to hold that a trial judge abused his discretion by not correcting, *ex mero motu*, an argument which defense counsel did not deem to be prejudicial. *State v. Smith*, 294 N.C. 365, 241 S.E. 2d 674 (1978); *State v. Martin*, 294 N.C. 253, 240 S.E. 2d 415 (1978); *State v. Noell*, 284 N.C. 670, 202 S.E. 2d 750 (1974).

Our careful review of the district attorney's argument in this case discloses that he fulfilled the obligation of his office with zeal. His argument was based upon the evidence presented and was within the recognized bounds of propriety. Further, we have heretofore considered comments similar in nature to those here specifically excepted to and found them to be without prejudicial error. *See, e.g., State v. Wortham,* 287 N.C. 541, 215 S.E. 2d 131 (1975); *State v. Stegman,* 286 N.C. 638, 213 S.E. 2d 262 (1975); *State v. Noell, supra; State v. Westbrook,* 279 N.C. 18, 181 S.E. 2d 572 (1971); *State v. Mullis,* 233 N.C. 542, 64 S.E. 2d 656 (1951). We find no prejudicial error in the argument of the district attorney.

We have carefully reviewed this entire record and find no error sufficient to warrant a new trial.

No error.