IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-438

Filed 21 May 2025

Hertford County, No. 21CRS050140-450

STATE OF NORTH CAROLINA

v.

TERRENCE TERRELL JOYNER

Appeal by Defendant from judgment entered 22 September 2023 by Judge J. Carlton Cole in Hertford County Superior Court. Heard in the Court of Appeals 26 February 2025.

> *Attorney General Jeff Jackson, by Senior Deputy Attorney General Amar Majmundar, for the State-Appellee.*
>
> *The Sweet Law Firm, PLLC, by Kaelyn N. Sweet, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Terrence Terrell Joyner appeals from a judgment entered upon a jury's guilty verdict of first-degree murder. Defendant argues that the trial court erred by improperly expressing its alignment with the Hertford County Sheriff's Office in the presence of the jury, admitting the victim's bloody clothing into evidence, admitting a forensic download of Defendant's cell phone into evidence, and failing to intervene ex mero motu during the State's closing remarks. For the following reasons, we find no error.

## I. Background

Defendant was charged with first-degree murder for a shooting that occurred on 26 February 2021. The State's evidence at trial tended to show the following:

Defendant and Chyna Swain engaged in a romantic relationship for nearly four years, beginning in 2017 when Chyna was a senior in high school. During this time, they also worked together. Chyna ended the relationship in December 2020; approximately one month later, Chyna met and began a romantic relationship with Vashuan Smith. Despite having limited communication after their break-up, Defendant often told Chyna that he wanted to get back together.

At approximately 4:00 p.m. on 26 February 2021, when Chyna was on her way home from work, Defendant called Chyna and asked if she could return one of his personal belongings to him. Chyna agreed and met Defendant at a hotel with the item. When Chyna returned home, she realized that Defendant had been in her room and laid out on her bed various items she had given him during their relationship. Defendant had not told Chyna about his plans to go to her home or return these items.

Soon after, Vashuan invited Chyna to his house for dinner. A few minutes after arriving at Vashuan's house, Chyna and Vashuan decided to drive to Chyna's aunt's house. Chyna drove, and Vashuan sat in the passenger seat. As they approached Chyna's aunt's house, Chyna received a call from Defendant. Vashuan answered the call. He told Defendant that Chyna was unavailable and hung up the phone. Defendant attempted to call Chyna several more times, but Chyna did not

answer.

Chyna visited with her aunt for a short time. As Chyna and Vashuan were driving back to Vashuan's house, Defendant again called Chyna. She answered, and Defendant asked her where she was. When she refused to tell him, Defendant became irritated and said, "Don't worry about it. . . . I know where you're at." Defendant then asked to speak to Vashuan; Vashuan, listening to the conversation on speakerphone, took the phone and told Defendant, "I'm with my girl." Chyna hung up, but Defendant continued to call.

A few minutes later, as Chyna was stopped at a red light, she saw Defendant's car behind her car. With Defendant following them, Chyna continued driving toward Vashuan's house. At one point, Defendant quickly passed Chyna's car and immediately stopped his car in front of hers. Chyna had to slam her brakes to avoid hitting Defendant's car from behind. Chyna went around Defendant's car and continued to drive toward Vashuan's house. When they arrived at Vashuan's house, Chyna drove her car into the driveway; Defendant stopped his car on the street in front of the house. Vashuan immediately got out of the car and ran toward Defendant's car. Defendant got out of his car and approached Chyna, who was standing in the driveway. Defendant grabbed Chyna by the arm and attempted to lead her back to his car.

Vashuan's mother, Shannon Bell-Harrell, arrived home at this point. Bell-Harrell approached Chyna, Defendant, and Vashuan. Positioned between

Defendant and Vashuan, she told Defendant to leave. Defendant pushed Bell-Harrell to the side, and Vashuan hit Defendant in response. Vashuan and Defendant then began to fight.

As they fought, they moved away from the driveway and into the front yard. Chyna, still standing in the driveway, watched the fight. She saw Vashuan suddenly retreat from Defendant by walking backwards. She then saw Defendant fire multiple shots at Vashuan, causing him to fall face-forward on the ground. Defendant fired several more shots at Vashuan, ran to his car, and drove away. Chyna called 911. Vashuan's parents rushed him to the hospital, where he was declared deceased. Eight shell casings from Defendant's gun were found at the scene.

Defendant testified on his own behalf. According to Defendant, he called Chyna multiple times on the night of the shooting because he wanted to return Chyna's belongings to her. When Chyna told him over the phone that she was at her aunt's house, Defendant asked if he could meet her there and began driving in that direction. When he arrived at her aunt's house, however, Chyna had already left. Defendant, who testified that he "was being stubborn," called Chyna and asked if she could pull over somewhere. Stopped at a red light, Defendant realized he was behind Chyna's car, and he flashed his lights and called Chyna in an attempt to get her to pull over. Chyna, however, continued to drive. Defendant began following her, and at one point, he pulled around Chyna's car and slammed his brakes—another attempt to get Chyna to pull over.

After arriving at Vashuan's house, Defendant testified that Vashuan immediately ran to Defendant's car, banged on his windows, and told Defendant to "get out." Vashuan then ran around the back of the house, and Defendant grabbed his gun for safety before he got out of his car. According to Defendant, while he was standing with Chyna in the driveway, Vashuan suddenly ran toward Defendant and attacked him. Vashuan threatened to kill Defendant and repeatedly hit him. Defendant then saw Vashuan reach for something. Not knowing what it was and fearing for his life, Defendant took his gun out of his pocket and shot Vashuan.

Despite fleeing, Defendant also called 911. The dispatcher instructed Defendant to go to the Sheriff's Department, and Defendant remained on the phone with dispatch until he pulled into the Sheriff's Department parking lot. He left his gun on the dashboard of his car before being escorted into the Sheriff's Department by law enforcement.

The jury convicted Defendant of first-degree murder, and the trial court sentenced Defendant to life imprisonment without the possibility of parole. Defendant appeals.

## II. Discussion

### A. Trial Court's Remarks to the Jury

Defendant first argues that the trial court erred by improperly expressing its alignment with the Hertford County Sheriff in violation of N.C. Gen. Stat. §§ 15A-1222 and 15A-1232.

## 1. *Standard of Review*

"The statutory prohibitions against expressions of opinion by the trial court contained in [N.C. Gen. Stat.] § 15A-1222 and [N.C. Gen. Stat.] § 15A-1232 are mandatory." *State v. Young*, 324 N.C. 489, 494 (1989). "A defendant's failure to object to alleged expressions of opinion by the trial court in violation of those statutes does not preclude his raising the issue on appeal." *Id.* (citations omitted). We review this alleged statutory violation for prejudicial error under N.C. Gen. Stat. § 15A-1443(a). *State v. Austin*, 378 N.C. 272, 276-77 (2021). Prejudicial error occurs "when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2023). The defendant bears the burden of showing prejudice. *Id.*

Under this standard of review, we first consider the totality of the circumstances "to determine whether the trial court's comments crossed into the realm of impermissible opinion." *Austin*, 378 N.C. at 277 (cleaned up). If so, we then determine whether "the comments had such a prejudicial effect that there is a reasonable possibility of a different result absent the error." *Id.*; N.C. Gen. Stat. § 15A-1443(a).

## 2. *Analysis*

Sections 15A-1222 and 15A-1232 "prohibit a trial court judge from expressing an opinion during trial and when instructing the jury." *Id.* at 276; N.C. Gen. Stat. §§

15A-1222, 15A-1232 (2023). These statutes impose upon the trial court a strict duty of absolute impartiality, "and this is so even when such expression of opinion is inadvertent." *State v. Hudson*, 295 N.C. 427, 435 (1978) (citation omitted); *Austin*, 378 N.C. at 278. The trial court "may not express an opinion as to the guilt or innocence of a criminal defendant, the credibility of a witness, or any other matter which lies in the province of the jury." *Hudson*, 295 N.C. at 434-35 (citations omitted). "[A]n alleged improper statement will not be reviewed in isolation, but will be considered in light of the circumstances in which it was made." *State v. Jones*, 358 N.C. 330, 355 (2004) (citation omitted).

Here, at the end of the first day of jury selection, the trial court introduced the Sheriff of Hertford County to the potential jurors: "Before y'all leave, the High Sheriff has come to the courtroom. Sheriff, stand up. This is Dexter Hayes. I'm sure all of you know him." Throughout the rest of the five-day trial, the trial court thanked the jurors for their service "on behalf of the Sheriff" approximately sixteen times.

The State called three deputies from the Hertford County Sheriff's Office to testify on behalf of the State against Defendant. Although introducing the Sheriff to the jury and repeatedly thanking the jury for their service "on behalf of the Sheriff" was more than usual in this case, we cannot say that the trial court made an improper "expression of judicial leaning." *Hudson*, 295 N.C. at 434-35.

Furthermore, even had the remarks been erroneous, Defendant is unable to show prejudicial error. The evidence of Defendant's guilt was overwhelming: the

State called a total of eleven witnesses, two of whom personally witnessed Defendant shoot the victim, and also introduced physical evidence. The trial court also instructed the jury as follows:

> The law requires that the presiding judge be impartial. You should not infer from anything that I've done or said that the evidence is to be believed or disbelieved, that a fact has been proved, or what your findings ought to be. It is your duty to find the facts and render a verdict reflecting the truth.

Considering the trial court's comments "in light of the circumstances in which [they were] made," *Jones*, 358 N.C. at 355, Defendant has failed to show that the trial court's improper comments "had such a prejudicial effect that there is a reasonable possibility of a different result absent the error." *Austin*, 378 N.C. at 277-78 (citations omitted).

## B. Evidence of the Victim's Clothing

Defendant next contends that the admission of Vashuan's bloody clothing into evidence violated Rule 403 because the evidence's probative value was substantially outweighed by the danger of unfair prejudice. This argument is without merit.

This Court reviews Rule 403 rulings for abuse of discretion. *State v. Hennis*, 323 N.C. 279, 285 (1988). "An abuse of discretion results when the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Whaley*, 362 N.C. 156, 160 (2008) (quotation marks and citation omitted). A defendant advancing such an argument must also

prove "that absent the error a different result would have been reached at trial." *State v. Ferguson*, 145 N.C. App. 302, 307 (2001) (citation omitted).

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2023). All probative evidence offered against a defendant by the State has some prejudicial effect; however, "the fact that evidence is prejudicial does not mean that it is necessarily *unfairly* prejudicial." *State v. Rainey*, 198 N.C. App. 427, 433 (2009) (emphasis added and citations omitted). "Unfair prejudice," in the context of Rule 403, means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." *State v. Buchanan*, 288 N.C. App. 44, 48 (2023) (citation omitted).

Here, the bloody shirt, shorts, and pants that Vashuan was wearing at the time of the shooting were admitted into evidence to illustrate the testimony of Major Scott Cofield of the Hertford County Sheriff's Office. This clothing was "not excessively displayed or discussed at trial," and the State used this evidence to show how and where Vashuan was shot. *State v. Knight*, 340 N.C. 531, 560 (1995) (admission of the victim's bloody shirt did not violate Rule 403 where it "was not excessively displayed or discussed at trial and was used to illustrate the testimony of the doctor who performed the autopsy on the victim's body"); *see State v. Holder*, 331 N.C. 462, 485-86

(1992) (admission of the victim's bloody shirt did not violate Rule 403). We agree with the trial court that the probative value of Vashuan's bloody clothing was not substantially outweighed by the danger of unfair prejudice and conclude that the trial court did not abuse its discretion by admitting this clothing into evidence at trial.

## C. Forensic Download of Defendant's Cell Phone

Defendant next argues that the trial court plainly erred by admitting a forensic download of Defendant's cell phone. Specifically, Defendant contends that the State failed to lay a proper foundation for the admission of this evidence, in violation of Rule 901. This argument lacks merit.

We review an unpreserved issue regarding an error in the admissibility of evidence for plain error. *State v. Cummings*, 346 N.C. 291, 313-14 (1997); N.C. R. App. P. 10(a)(4). For a trial court's error to amount to plain error,

> a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]

*State v. Lawrence*, 365 N.C. 506, 518 (2012) (quotation marks and citations omitted).

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a) (2023).

- 10 -

Various means may be used to authenticate evidence, including "testimony of a witness with knowledge that a matter is what it is claimed to be." *State v. Taylor*, 178 N.C. App. 395, 413 (2006) (quotation marks omitted); N.C. Gen. Stat. § 8C-1, Rule 901(b) (2023). Therefore, it is not error under Rule 901 for a trial court to admit evidence so long as it can "reasonably determine that there was sufficient evidence to support a finding that the matter in question is what its proponent claims." *State v. Wiggins*, 334 N.C. 18, 34 (1993) (citation omitted).

Here, the forensic download of Defendant's cell phone was admitted into evidence through the testimony of William Keith Lassiter, Sergeant of Investigations for the Hertford County Sheriff's Office. Sergeant Lassiter testified that he himself examined Defendant's phone and performed the forensic extraction of the phone. Sergeant Lassiter then testified as to what was found on Defendant's phone, which included text messages and call logs. Sergeant Lassiter, having been the person who examined the phone and performed its data extraction, sufficiently showed that he had "knowledge that [the] matter is what it is claimed to be" and therefore properly authenticated the evidence before the trial court admitted it. *Taylor*, 178 N.C. App. at 413; N.C. Gen. Stat. § 8C-1, Rule 901.

Defendant argues that the evidence was not properly authenticated because Sergeant Lassiter never testified as to when he conducted the forensic download and what particular method was used. This argument, however, fails to accurately reflect the law. All that is required under Rule 901 is that a witness with knowledge about

the evidence in question testifies that "the matter in question is what its proponent claims." *Wiggins*, 334 N.C. at 34 (citation omitted) (noting that the defendant is free to introduce any competent evidence of his own relevant to the weight or credibility of the properly authenticated evidence in question). Accordingly, the trial court did not err, much less plainly err, by admitting the forensic download of Defendant's cell phone into evidence.

## D. State's Closing Remarks

Defendant finally argues that the trial court erred by failing to intervene ex mero motu during the State's closing remarks. Specifically, Defendant argues that the State's closing remarks improperly assumed facts not in evidence in violation of N.C. Gen. Stat. § 15A-1230 and the Rules of Professional Conduct. These arguments lack merit.

Because Defendant failed to object at trial to this portion of the State's closing argument, the proper standard of review is whether "the remarks were so grossly improper that the trial court abused its discretion by failing to intervene *ex mero motu*." *State v. Mitchell*, 353 N.C. 309, 324 (2001). "To establish such an abuse, defendant must show that the prosecutor's comments so infected the trial with unfairness that they rendered the conviction fundamentally unfair." *State v. Anthony*, 354 N.C. 372, 423 (2001) (citation omitted). "[T]he standard of review requires a two-step analytical inquiry: (1) whether the argument was improper; and, if so, (2) whether the argument was so grossly improper as to impede the defendant's

right to a fair trial." *State v. Huey*, 370 N.C. 174, 179 (2017) (citations omitted).

"During a closing argument to the jury an attorney may not . . . make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice." N.C. Gen. Stat. § 15A-1230(a) (2023). Nevertheless, "prosecutors are given wide latitude in the scope of their argument and may argue to the jury the law, the facts in evidence, and all reasonable inferences drawn therefrom." *State v. Phillips*, 365 N.C. 103, 135 (2011) (quotation marks and citations omitted).

Defendant argues that the State's closing remarks were improper for several reasons. First, Defendant contends that the State argued in favor of premeditation and deliberation based on the forensic download of Defendant's cell phone that was improperly admitted into evidence. As we have determined that the forensic download of Defendant's cell phone was properly authenticated and admitted, this argument lacks merit.

Second, Defendant contends that the State relied on improperly admitted hearsay to argue in its closing remarks that Defendant's assertion of self-defense was a "calculated ruse." During the State's cross-examination of Defendant, Defendant answered "yes" when the State asked, "And in your carrying a concealed weapon class they told you that if you were in fear for your life you could shoot?" Subsequently, in its closing remarks, the State argued, "[Defendant] was told in that class: If you're in fear of your life you can use your weapon. So he knew all he had to do was say he

was in fear for his life. . . . [H]e created the situation so he could say that."

Defendant did not object at trial to the statement he now asserts is erroneously-admitted hearsay, and Defendant has failed to argue on appeal that the admission of the statement amounts to plain error. Accordingly, the statement was properly admitted, and the State properly argued "the facts in evidence[] and all reasonable inferences drawn therefrom." *Phillips*, 365 N.C. at 135 (quotation marks and citations omitted).

Furthermore, Rule 3.4(e) of the Rules of Professional conduct prohibits an attorney from alluding to any matter that "the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence." N.C. R. Prof. Conduct 3.4(e). Because the State did not rely on improperly admitted hearsay during its closing remarks, the State did not violate Rule 3.4(e). Accordingly, the trial court did not abuse its discretion by failing to intervene ex mero motu during the State's closing remarks.

### III.    Conclusion

For the foregoing reasons, we find no error.

NO ERROR.

Judges ZACHARY and GORE concur.