An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-312

Filed 4 February 2026

Mecklenburg County, Nos. 21CR206248-590, 21CR206249-590

STATE OF NORTH CAROLINA

      v.

SHELDON NICHOLAS REID, Defendant.

Appeal by Defendant from judgment entered 28 March 2024 by Judge George C. Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 October 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Jodi P. Carpenter, for the State.*
>
> *Piedmont Defenders, Inc., by Reid Cater, for Defendant–Appellant.*

MURRY, Judge.

Sheldon N. Reid (Defendant) appeals from judgments entered following a jury's guilty verdicts of robbery with a dangerous weapon (RWDW) and conspiracy to commit robbery with a dangerous weapon (Consp-RWDW). On appeal, Defendant argues that "the trial court violated N.C.G.S. § 15A-1232 and § 15A-1222 by expressing the opinion to the jury that Defendant and Jacquez Joseph were the

individuals in a surveillance video of the robbery." For the following reasons, this Court disagrees and holds that Defendant received a fair trial, free from prejudicial error.

## I. Background

This matter arises out of the 5 December 2022 robbery of the Sea Story Arcade in Charlotte, North Carolina (arcade). Around 2:20 a.m., arcade owner Eunjoo Hur was working alongside employees Nichole Harrell and Nan Moe when two masked men entered the arcade armed with handguns. One man held Harrell at gunpoint and took a money bag from Hur. The other man forced Moe's head against a table at gunpoint and took her money bag. Surveillance cameras recorded the entire incident.

Detective Lauren Wait of the Charlotte–Mecklenburg Police Department investigated the robbery. Upon reviewing the surveillance footage, Detective Wait noticed one of the men wearing a red crewneck sweatshirt, red-striped black track pants with the word "Hustlers" written on the lower-right leg, a black toboggan hat, and white Nike Air Force One sneakers. Following an anonymous tip identifying Defendant and Jacquez Joseph as suspects in the robbery, Detective Wait compared the surveillance images to Defendant's social media photographs and determined that Defendant appeared to match the man from the video.

On 2 March 2022, officers executed a search warrant at Defendant's residence. Their search uncovered white Nike Air Force One sneakers, two black toboggan hats, a Glock handgun magazine, ammunition wrapped in foil, Defendant's cell phone, and

a pair of red-striped black pants with "Hustlers" written on the lower-right leg. Officers found Defendant's wallet and identification inside the pocket of these pants.

Forensic Analyst Ray Patterson analyzed the phone recovered from Defendant's residence. He accessed user accounts associated with a "Shelton Reid" and "Shell Reid" and recovered multiple videos of Defendant holding a handgun similar in appearance to the one used during the robbery. He also extracted call logs and text messages between Defendant and Joseph from around the time of the robbery that discussed "hitting up the card house."

On 7 March 2022, a grand jury indicted Defendant for RWDW and Consp-RWDW. After a mistrial, this matter came for trial on 25 March 2024. At trial, Harrell testified that, although the men wore masks, she remembered one of the men's eyes and identified them as Defendant's. During her testimony, the State played clips of the surveillance footage for the jury, allowing the jury to see what the men wore at the scene. Officer Wait testified that Defendant matched the physical appearance of one of the men in the surveillance video and that officers recovered clothing from Defendant's residence consistent with the man's clothing in the video. Additionally, the State introduced phone logs and text messages through Analyst Patterson, who identified the phone as Defendant's because it contained user accounts in his name and photos showing him holding firearms. Defendant proffered no evidence or testimony in his defense.

During deliberations, the jury sent a written note to the trial court requesting to review three specific portions of the surveillance video. The jury labeled the requested clips as "Video—Sitting together @ Fishroom + Got Up," "Video—Shell to car + return," and "Video—[Joseph] robbing [Harrell]." Upon receipt, the trial court had the jury return to the courtroom to ask them whether "the fish room[ ]," the "[s]hell to car and return," and "robb[ery]" videos "w[ere] shown in closing arguments." The trial court then replayed the videos for the jury in open court. That same day, the jury found Defendant guilty of RWDW and Consp-RWDW. The trial court sentenced Defendant to two concurrent sentences of 60–84 months and 20–36 months' imprisonment. Defendant timely appealed.

## II.    Jurisdiction

As a threshold matter, we must determine whether we have jurisdiction to hear Defendant's appeal because he did not object to the trial court's comments at trial. A statute preserves an issue for appellate review if the statute "either: (1) requires a specific act by a trial judge; or (2) leaves no doubt that the legislature intended to place the responsibility on the judge presiding at the trial." *In re E.D.*, 372 N.C. 111, 121 (2019) (citation modified). Thus, the statutory requirements against the trial court's expression of opinions do not preclude Defendant's ability to raise this issue on appeal despite his failure to object. *See State v. Young*, 324 N.C. 489, 492 (1989). Because Defendant alleges that the trial court "improper[ly] . . . express[ed] an opinion on the evidence in violation of N.C.G.S. §§ 15A-1222 and

15A-1232, the error is preserved for review without objection due to the mandatory nature of these statutory prohibitions." *State v. Duke*, 360 N.C. 110, 123 (2005). Accordingly, we review Defendant's appeal accordingly.

## III. Analysis

On appeal, Defendant argues that the trial court violated N.C.G.S. §§ 15A-1222, -1232 "by expressing the opinion to the jury that [Defendant] and Jacquez Joseph were the individuals in a surveillance video in a robbery." He argues that the trial court conveyed to the jury a belief that Defendant and Joseph "were the men in the video" when it referred to the videos as "Shell to car and return" and "the video of [Joseph] robbing [Harrell]." For the following reasons, this Court disagrees and holds that Defendant received a fair trial, free from prejudicial error.

The trial court must not express an opinion during trial or when instructing the jury. *See* N.C.G.S. § 15A-1222 (2025); *id.* § 15A-1232; *Young*, 324 N.C. at 494 ("The statutory prohibitions against expressions of opinion by the trial court . . . are mandatory."). Specifically, N.C.G.S. § 15A-1222 and § 15A-1232 prohibit the trial court's expression of an "opinion as to the guilt or innocence of a criminal defendant, the credibility of a witness, or any other matter which lies in the province of the jury." *State v. Hudson*, 295 N.C. 427, 434–43 (1978), and impose "a strict duty of absolute impartiality" on the trial court, *State v. Joyner*, 299 N.C. App. 93, 98 (2025), "even when such expression of opinion is inadvertent," *Hudson*, 295 N.C. at 435.

When reviewing alleged violations of N.C.G.S. § 15A-1222 and § 15A-1232, we

consider the "totality of the circumstances" to determine whether the trial court's comments "cross[ed] into the realm of impermissible opinion." *State v. Austin*, 378 N.C. 272, 278 (2021). If the comments are impermissible, we then determine whether they "had such a prejudicial effect that there is a reasonable possibility of a different result absent the error." *Id*. But not every instance of a trial court's expression of opinion "result[s] in prejudicial error." *State v. Blackstock*, 314 N.C. 232, 236 (1985). A trial court's improper opinion "is not grounds for a new trial if, when considered in the light of the circumstances under which it was made, it could not have prejudiced [the] defendant's case." *State v. King*, 311 N.C. 603, 618 (1984). When assessing prejudice, we consider whether the trial court's "comments, questions or actions constitute reversible error" "in light of the factors and circumstances disclosed by the record." *Blackstock*, 314 N.C. at 236. In other words, the trial court's improper comment becomes prejudicial *only* when the jury can "reasonably infer from the evidence" that the trial court expressed an opinion on a "factual issue, the defendant's guilt, the weight of the evidence[,] or a witness's credibility." *Id*. The defendant bears the burden of showing this prejudice. *See Austin*, 378 N.C. at 278; N.C.G.S. § 15A-1443(a) (2025).

Assuming *arguendo* that the trial court's comments were an improper expression of opinion, Defendant has nonetheless failed to show prejudice. At trial, the State offered substantial evidence tending to show Defendant's commission of the robbery. First, Harrell testified that she remembered one of the men's eyes and

identified them as Defendant's. Second, Officer Wait identified Defendant as one of the men in the video based on her review of the surveillance footage and Defendant's social media pages. Analyst Patterson testified that, after analyzing the phone in Defendant's apartment, he found user accounts belonging to Defendant and videos of Defendant holding a weapon similar to the one used in the robbery. Additionally, the State offered other evidence tending to identify Defendant as one of the men in the robbery, including the surveillance video of the robbery, the clothes from Defendant's apartment matching those worn in the surveillance video, Defendant's phone contents, and a report with call data from Joseph's phone. Therefore, assuming the trial court's comments amounted to an expression of opinion "in light of the circumstances in which [they were] made," *State v. Jones*, 358 N.C. 330, 355 (2004), Defendant has failed to show that the comments "had such a prejudicial effect that there is a reasonable possibility of a different result absent the error," *Austin*, 378 N.C. at 277–78. Thus, we hold any such errors nonprejudicial.

## IV. Conclusion

For the reasons stated above, this Court holds that Defendant received a fair trial, free from prejudicial error.

NO PLAIN ERROR.

Judges STROUD and WOOD concur.

Report per Rule 30(e).