IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-353

Filed 2 July 2025

Cleveland County, Nos. 22CRS050596-220, 22CRS050597-220

STATE OF NORTH CAROLINA

v.

LINDA STIDHAM

Appeal by Defendant from judgments entered 28 September 2022 by Judge Forrest D. Bridges in Cleveland County Superior Court. Heard in the Court of Appeals 23 April 2025.

*Attorney General Jeff Jackson, by Assistant Attorney General Sean K. Lloyd, for the State-Appellee.*

*Mikayla Mann for Defendant-Appellant.*

COLLINS, Judge.

Defendant Linda Stidham appeals from the judgments entered upon a jury's guilty verdicts of possession of methamphetamine and possession of drug paraphernalia. Defendant argues that the trial court erred by sentencing her as a prior record level III instead of a prior record level II, and plainly erred by admitting certain expert testimony under North Carolina Rule of Evidence 702. Although the trial court erred by sentencing Defendant as a prior record level III, Defendant has failed to show that the error was prejudicial. Additionally, because the state's expert

witness sufficiently explained the procedures he employs when identifying controlled substances and how he applied those procedures to the facts of the instant case, the trial court did not err by admitting his expert opinion testimony.

## I. Background

Defendant was pulled over on 17 February 2022 while driving her car by Officer Steven Hawkins with the Shelby Police Department who ran her vehicle's tag and discovered that her license was revoked. Officer Hawkins called for K-9 Officer Andrew Sumner to come to the scene and began issuing Defendant a citation for "[n]o operator license." Officer Sumner arrived soon after, and his K-9 alerted on Defendant's vehicle. Officer Hawkins then searched the vehicle and found a "crystal-like substance which tested positive for methamphetamine" in a blue coin purse. Officer Hawkins arrested Defendant. Defendant told Officer Hawkins that "she was on probation at that time[.]"

At trial, the State tendered and the trial court received Thomas Rockhold, a forensic scientist at the North Carolina State Crime Lab, as an expert in the field of forensic chemistry, without objection. Rockhold spoke to his extensive background in forensic science and chemistry, his experience with testing for controlled substances, and how he has testified in court over twenty times. Rockhold described the "two-part test" that the North Carolina State Crime Lab routinely conducts when analyzing potential controlled substances. Rockhold then testified that he used the same procedure to test the substance found in the coin purse in Defendant's vehicle and

ultimately concluded that the material found in Defendant's car was 3.21 grams of methamphetamine. The official lab report with Rockhold's findings was entered into evidence. Defendant did not object to the admission of Rockhold's testimony.

The jury found Defendant guilty of possession of methamphetamine and possession of drug paraphernalia. At the sentencing hearing, the State tendered Defendant as a prior record level III "as stipulated by the defendant and her counsel." The State pointed out that Defendant had "recently been convicted of another meth charge," and that Defendant "received this while she was out on bond for that one." The State asked the trial court to sentence Defendant at the top of the presumptive range. Defense counsel argued that Defendant should receive a suspended sentence and asked for the payment of attorney's fees. The trial court then ordered the following:

> In the Class 1 misdemeanor, possession of drug paraphernalia, the defendant has stipulated to the convictions shown on the prior record worksheet. Four of those convictions were on the same date. That will be three convictions, making her a prior conviction level 2 for misdemeanor purposes. For felony purposes, she has 6 prior record points, making her a record level 3.

Defendant did not object to either record level classification. The State provided defense counsel with the prior record worksheet containing six felony sentencing points, which defense counsel signed. The trial court sentenced Defendant to 45 days in Cleveland County jail for her misdemeanor conviction. The trial court sentenced her to 6 to 17 months of imprisonment, suspended for 18 months of

supervised probation with the special condition that she serve 60 days in confinement, for her felony conviction. Defendant appeals.

## II.    Discussion

## A.  Prior Record Level

Defendant first argues that the trial court erred by adding a prior record level point for Defendant having been on probation when she committed the offense in this case and thus sentencing her as a prior record level III for her felony conviction.

"The determination of an offender's prior record level is a conclusion of law that is subject to *de novo* review on appeal." *State v. Martin*, 230 N.C. App. 571, 572 (2013) (citation omitted). A defendant's argument that the trial court erred in calculating the defendant's prior record level is preserved for appellate review as a matter of law; the defendant need not have objected on that basis at the sentencing hearing. *See* N.C. Gen. Stat. § 15A-1446(d)(18) (2023); *State v. Ray*, 274 N.C. App. 240, 243-44 (2020).

### 1.  Notice Requirement & Waiver

"The prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions that the court, or with respect to subdivision (b)(7) of this section, the jury, finds to have been proved in accordance with this section." N.C. Gen. Stat. § 15A-1340.14(a) (2023). Subsection (b)(7) of the statute assigns one point "[i]f the offense was committed while the offender was on supervised or unsupervised probation, parole, or post-release

supervision[.]" N.C. Gen. Stat. § 15A-1340.14(b)(7) (2023).

If the State intends to assign a prior record level point pursuant to subsection (b)(7), "[t]he State must provide a defendant with written notice of its intent . . . at least 30 days before trial[.]" N.C. Gen. Stat. § 15A-1340.16(a6) (2023). However, a "defendant may waive the right to receive such notice." *Id.* In either scenario, the trial court must specifically "determine whether the State seeks a finding that a prior record level point should be found under [subsection] [](b)(7)." N.C. Gen. Stat. § 15A-1022.1(a) (2023). The trial court must also determine "whether the State has provided the [required] notice to the defendant" or "whether the defendant has waived his or her right to such notice." *Id.*

Where the defendant seeks to admit to the existence of a prior record level point under subsection (b)(7), N.C. Gen. Stat. § 15A-1022.1 sets out additional procedures the trial court must follow. *See* N.C. Gen. Stat. § 15A-1022.1(b) (2023). The trial court "shall address the defendant personally and advise the defendant" that "she is entitled to have a jury determine the existence of any . . . points under [subsection] (b)(7)" and that "she has the right to prove the existence of any mitigating factors at a sentencing hearing before the sentencing judge." *Id.* Additionally, "the court shall determine that there is a factual basis for the admission[] and that the admission is the result of an informed choice by the defendant." *Id.* § 15A-1022.1(c) (2023). The trial court is required to abide by these provisions "unless the context clearly indicates that they are inappropriate." *Id.* § 15A-1022.1(e) (2023); *see State v.*

*Scott*, 287 N.C. App. 600, 608 (2023).

Here, the record does not support the State's assertion that it provided the requisite notice to Defendant. The State argues that it satisfied the notice requirement because "Defendant's counsel [] signed the Sentencing Worksheet to indicate his acknowledgment and agreement with the worksheet, which listed the extra point for probation." However, it is well-settled that a sentencing worksheet, without more, is insufficient to establish notice under N.C. Gen. Stat. § 15A-1340.16(a6). *See State v. Crook*, 247 N.C. App. 784, 797 (2016) ("At most, this prior record worksheet constituted a possible calculation of Defendant's prior record level and did not provide affirmative notice that the State intended to prove the existence of the prior record point . . . as required by N.C. Gen. Stat. § 15A-1340.16(a6).") (citation omitted).

The State further contends that even if it failed to give proper notice, Defendant waived her right to notice by stipulating to having committed the offense while on probation. Defendant, however, did not so stipulate. At trial, Defendant testified about crimes she had previously been convicted of, but Defendant never admitted that she was on probation while she committed the offenses she was on trial for in this case.

Therefore, the State did not provide Defendant with notice and Defendant did not waive her right to notice under N.C. Gen. Stat. § 15A-1340.16(a6).

Furthermore, at the sentencing hearing, the State tendered Defendant as a

prior record level III after adding a prior record level point under subsection (b)(7), and the following colloquy ensued:

> [THE STATE]:    Your Honor, the State is tendering [Defendant] as a record level 3 as stipulated by the defendant and her counsel. . . .
>
> THE COURT:    Okay.  What do you want to say?
>
> [THE STATE]:    Your Honor, [Defendant], as you can see, has recently been convicted of another meth charge last month.  She received this while she was out on bond for that one. . . .
>
> I would ask the Court to sentence her at the top of the presumptive range.

Despite the State's claim that Defendant committed this offense while she was "out on bond" for a previous offense, the trial court made no inquiry into whether written notice was given or whether Defendant waived her right to notice.  The only instance in which the trial court personally addressed Defendant was regarding Defendant's ability to pay her attorney's fees.  The procedures outlined in N.C. Gen. Stat. § 15A-1022.1 were not followed by the trial court in this case.  Furthermore, the context does not clearly indicate that such procedures were unnecessary.  *See* N.C. Gen. Stat. § 15A-1022.1(e); *see also Scott*, 287 N.C. App. at 608.  The trial court thus erred by failing to follow them.

Accordingly, the trial court erred by adding a prior record level point under N.C. Gen. Stat. § 15A-1340.14(b)(7).  As the addition of this prior record level point elevated Defendant from a prior record level II to a prior record level III, the trial

court erred by sentencing Defendant as a prior record level III.

### 2. *Prejudice*

Nonetheless, Defendant has failed to show that the trial court's sentencing error was prejudicial.

A defendant bears the burden of showing not only error in the trial court's calculation of her prior record level, but prejudice resulting from that error.  N.C. Gen. Stat. § 15A-1443(a) (2023); *see State v. Lindsay*, 185 N.C. App. 314, 315-16 (2007) ("This Court applies a harmless error analysis to improper calculations of prior record level points.") (citations omitted).  "A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a).

The sentence imposed by the trial court "shall contain a sentence disposition specified for the class of offense and prior record level, and its minimum term of imprisonment shall be within the range specified for the class of offense and prior record level, unless applicable statutes require or authorize another minimum sentence of imprisonment." *Id*. § 15A-1340.13(b) (2023).

There are three kinds of sentence dispositions: active punishment, intermediate punishment, and community punishment. *Id*.  An active punishment is a sentence that "requires an offender to serve a sentence of imprisonment and is

not suspended." *Id.* § 15A-1340.11(1) (2023). An intermediate punishment is a sentence that "places an offender on supervised probation" and "may include" recovery court, special probation, and one or more community or intermediate probation conditions. *Id.* § 15A-1340.11(6) (2023). A community punishment is a sentence that does not include an active punishment, recovery court, or special probation but "may include" one or more community or intermediate probation conditions. *Id.* § 15A-1340.11(2) (2023).

The block on the felony punishment chart for a class I felony for a prior record level II authorizes a community or an intermediate punishment and a minimum presumptive range sentence of 4-6 months. *Id.* § 15A-1340.17 (2023). The block for a class I felony for a prior record level III authorizes only an intermediate punishment and a minimum presumptive range sentence of 5-6 months. *Id.*

Here, the trial court sentenced Defendant as a prior record level III to an intermediate punishment of 6 to 17 months imprisonment, suspended for 18 months of supervised probation with the special condition that she complete 60 days in confinement.

This 6-month minimum was the highest minimum sentence in the presumptive range for a class I felony at both prior record levels II and III. *See id.* § 15A-1340.17. Although the trial court could have sentenced Defendant to a minimum of 5 months in prison at the erroneous prior record level III, it did not do so. Accordingly, Defendant has failed to show that there is a "reasonable possibility" that

the trial court would have sentenced Defendant to a minimum term of 5 or 4 months had it sentenced Defendant at the correct prior record level II.  *See id.* § 15A-1443(a).

This case is therefore distinguishable from *State v. Williams*, 355 N.C. 501 (2002).  There, the trial court incorrectly sentenced defendant as a prior record level VI instead of V for several noncapital felony convictions.  *Id.* at 587.  The trial court imposed the highest minimum sentence allowed in the presumptive range for all but one of the convictions.  *Id.*  Had the trial court considered defendant's prior record level to be V rather than VI, the trial court "could not have imposed minimum sentences of [the] duration" it did for those convictions.  *Id.*  On the remaining noncapital felony conviction, the trial court sentenced defendant to a minimum term that was less than the highest minimum term.  *Id.*  The State argued that this lesser sentence indicated that "the trial court may have been somewhat lenient" with the sentence such that "defendant has not suffered any harm" by the improper prior record level calculation.  *Id.*  The Supreme Court rejected this argument, explaining that "[i]f the trial court was lenient with regard to sentencing defendant" on that charge, "then that is for the trial court to determine, not the State." *Id.*  Accordingly, the Supreme Court sent the case back for resentencing on all defendant's noncapital felony convictions.  *Id.*

Unlike in *Willaims*, the minimum sentence imposed in this case was the highest minimum sentence in the presumptive range at both prior record levels II and III.  Also unlike in *Williams*, the trial court in this case could have sentenced

Defendant to a lesser minimum term at the erroneous prior record level, but did not. Accordingly, *Williams* does not control this case.

Furthermore, although the trial court was authorized to impose a special condition of probation as part of an intermediate punishment at the erroneous prior record level III, it was not *required* to do so. *See* N.C. Gen. Stat. § 15A-1340.11(6) (An intermediate punishment is a sentence that "places an offender on supervised probation" and "may include" special probation.). Accordingly, there is no reasonable possibility that the trial court would have imposed a lesser intermediate punishment or a community punishment had it sentenced Defendant at the correct prior record level II.

For these reasons, Defendant has failed show prejudice resulting from the trial court's error in calculating her prior record level.

**B. Rule 702**

Defendant next contends that the trial court plainly erred by admitting Rockhold's expert opinion testimony because it failed to meet the reliability requirements of Rule 702. Specifically, Defendant argues that Rockhold "did not demonstrate that his opinions were the product of reliable principles and methods that he reliably applied to the facts of this case."

### *1. Preservation & Standard of Review*

"In order to preserve an issue for appellate review, a party must have presented to the trial court a timely request, objection, or motion, stating the specific

grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context." N.C. R. App. P. 10(a)(1). In criminal cases, "an issue that was not preserved by objection noted at trial . . . nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4). Generally, "[a] trial court's ruling on Rule 702(a) is reviewed for abuse of discretion." *State v. Phillips*, 268 N.C. App. 623, 634 (2019). However, "an unpreserved challenge to the performance of [the] trial court's gatekeeping function under Rule 702 in a criminal trial is subject to plain error review." *State v. Stephen*, 910 S.E.2d 911, 916 (N.C. Ct. App. 2024) (quoting *State v. Gray*, 259 N.C. App. 351, 354 (2018) (citation omitted)).

Our Supreme Court has applied plain error review to the admission of evidence under Rule 702. *See State v. Clark*, 380 N.C. 204, 209 (2022); *State v. Jones*, 358 N.C. 330, 346-47 (2004); *State v. Stancil*, 355 N.C. 266, 267 (2002). Although our Supreme Court has recently reiterated that "plain error review is unavailable for issues that fall 'within the realm of the trial court's discretion,'" *State v. Gillard*, 386 N.C. 797, 821 (2024) (citation omitted), that case, and the cited supporting cases, all concern a trial court's discretionary ruling under Rule 403. *Id.* Furthermore, *Gillard* does not specifically disavow its own plain error review of Rule 702 arguments in *Clark*, *Jones*, or *Stancil*.

This Court has issued conflicting opinions on whether a trial court's

- 12 -

unchallenged admission of expert testimony under Rule 702 may be reviewed for plain error. *Compare State v. Hunt*, 250 N.C. App. 238, 246 (2016) (holding that "an unpreserved challenge to the performance of a trial court's gatekeeping function in admitting opinion testimony in a criminal trial is subject to plain error review in North Carolina state courts") *with State v. Norton*, 213 N.C. App. 75, 80-81 (2011) (noting that as "our Supreme Court has held that discretionary decisions of the trial court are not subject to plain error review," and because the trial court's decision to allow expert testimony under Rule 702 is discretionary, this Court did not address the issue) (citing *State v. Steen*, 352 N.C. 227, 256 (2000)). Given the lack of clarity on whether and when plain error review is available for a ruling under Rule 702(a), in the interest of ensuring that Defendant received a fair trial free from prejudicial error, and because Defendant specifically and distinctly argued plain error on appeal, we address the merits of her argument.

For a trial court's error to amount to plain error, "a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518 (2012) (citation omitted). A fundamental error is one that prejudices the defendant, meaning "that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* (quotation marks and citations omitted). "[B]ecause plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (cleaned up).

### 2. Admissibility of Expert Testimony Under Rule 702

"Whether expert testimony is admissible under Rule 702(a) is a preliminary question" that is to be decided by the trial court. *State v. McGrady*, 368 N.C. 880, 892 (2016) (citations omitted). Rule 702(a) provides a three-part test for determining whether a witness can be qualified as an expert:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion, or otherwise, if all of the following apply:
>
> (1) The testimony is based upon sufficient facts or data.
>
> (2) The testimony is the product of reliable principles and methods.
>
> (3) The witness has applied the principles and methods reliably to the facts of the case.

N.C. Gen. Stat. § 8C-1, Rule 702(a) (2023). These three requirements together make up the reliability inquiry discussed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). *McGrady*, 368 N.C. at 890.

"The precise nature of the reliability inquiry will vary from case to case depending on the nature of the proposed testimony. In each case, the trial court has discretion in determining how to address the three prongs of the reliability test." *Id.* (citation omitted). "In the context of scientific testimony, *Daubert* articulated five factors from a nonexhaustive list that can have a bearing on reliability. . . ." *Id.* at

890-91 (citing *Daubert*, 509 U.S. at 593-94). The trial court may consider the *Daubert* factors when "they are reasonable measures of the reliability of expert testimony." *Id.* at 891 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)). The *Daubert* factors "are part of a flexible inquiry, so they do not form a definitive checklist or test, [a]nd the trial court is free to consider other factors that may help assess reliability . . . ." *Id.* (quotation marks and citations omitted).

Here, Defendant challenges the second and third elements of the Rule 702 test for reliability, and in doing so emphasizes that Rockhold failed to address several of the *Daubert* factors. Rockhold was tendered and received, without objection, as an expert "in the field of forensic chemistry for the purposes of determining narcotics or controlled substances." Regarding the second element of the Rule 702(a) test, which includes the reliability of Rockhold's principles and methods, the following exchange took place between the prosecutor and Rockhold:

> Q:    Okay. And what types of controlled substances would those be?
>
> A:    It includes methamphetamine, heroin, [and] fentanyl. It comes in all shapes and sizes; powders, pills, crystal material.
>
> Q:    Can you describe for the jury how you go about testing those substances?
>
> A:    Generally, we use a two-part test. The first test is a preliminary test. That's usually a color test where we will take a small amount of the sample material that we are testing and place it in a spot well. I will add the material to the spot well with the reagent and look for a color

reaction. Based on that reaction and the material I am dealing with, I will then do a confirmatory test which uses instrumentation to analyze the material.

Q: And is that generally accepted in the scientific community as a way to test substances for narcotics?

A: Yes, it is.

Rockhold testified that when evidence is delivered to the crime lab, it is in a secure location at all times and documented on a chain of custody.

Rockhold then satisfied the third element of the Rule 702(a) test by explaining how he applied his principles and methods to the facts of the instant case in the following exchange:

Q: . . . [W]hat kind of testing did you do on this evidence?

A: So once I receive the material, I compare the information on the packaging to the [request for examination] to make [sure] that I have the right evidence. I then remove the Ziploc plastic bag from State's Exhibit No. 5, the blue purse. And then I remove the white crystalline material from that Ziploc plastic bag. I placed it on a scale to get a net weight of just the crystal material itself.

After that, I used a color test reagent for my preliminary test. I used a marquee color test which is a chemical that I prepare myself at the crime lab and did a quality control to check to make sure it functioned properly before I use it in case work. I added a small amount of the material to the marquee chemical in a spot well and observed an orange color reaction.

From there, I went on to my confirmatory test and measured the material on the infrared spectrometer, or IR. That instrument measures the material and generates a

graph of peaks. I compared those peaks to our library of drug standards. And based on that comparison and the color test, I formed an opinion as to what the material contained.

. . . .

The preliminary test, the colors we see can give us an idea of a certain class of drug. Orange can indicate drugs including [] methamphetamine. . . . It gives me an idea of what I might be dealing with and then I move on to my confirmatory test.

Q: And that is the infrared spectrometer?

A: Yes.

. . . .

So as the material is measured, the instrument looks at how the light interacts. It uses light to measure the material. And the material interacts with that light and the instrument detects those changes and creates a graph of peaks. Those graphs are unique for each substance and then we compare those to known drug standards.

As a result of the application of these tests to the facts of this case, Rockhold "determined that State's Exhibit No. 4 was a plastic Ziploc bag found to contain methamphetamine with a net weight of material of 3.21 plus or minus 0.06 grams." The State also submitted as evidence, without objection, Rockhold's laboratory report that accurately represents the analysis he performed and the conclusions he generated.

Rockhold explained in detail the procedures he routinely employs when identifying controlled substances and how he applied those procedures to the facts of

the instant case. His failure to testify as to all of the *Daubert* factors does not render his testimony unreliable or inadmissible. *See McGrady*, 368 N.C. at 891. Therefore, the trial court did not err, much less plainly err, by admitting Rockhold's testimony.

## III.    Conclusion

For the foregoing reasons, the trial court did not commit prejudicial error by sentencing Defendant as a prior record level III and did not err, much less plainly err, by admitting Rockhold's expert testimony under Rule 702.

NO PREJUDICIAL ERROR; NO ERROR.

Judge MURRY concurs.

Judge FREEMAN concurs in part and dissents in part by separate opinion.

FREEMAN, Judge, concurring in part and dissenting in part.

I concur with the majority opinion with the sole exception of the application of plain error review to the trial court's discretionary Rule 702 determination. In my view, because the admittance of expert testimony is a discretionary decision of the trial court, plain error review is unavailable and the merits of defendant's arguments concerning this testimony may not be considered. Accordingly, I respectfully dissent from that portion of the majority opinion.

Our Supreme Court rejected application of plain error review for discretionary decisions in *State v. Steen*, stating that "this Court has not applied the plain error rule to issues which fall within the realm of the trial court's discretion, and we decline to do so now." 352 N.C. 227, 256 (2000). Although our Supreme Court later deviated from this principle in *State v. Stancil*, 355 N.C. 266 (2002), *State v. Jones*, 358 N.C. 330 (2004), and *State v. Clark*, 380 N.C. 204 (2022), none of those cases mentioned *Steen* or its principle. Further, our Supreme Court has recently reiterated that "plain error is unavailable for issues that fall 'within the realm of the trial court's discretion'" and applied that principle in declining review of the trial court's Rule 403 determinations. *State v. Gillard*, 386 N.C. 797, 821 (2024) (quoting *Steen*, 352 N.C. at 256).

My colleagues correctly note that "*Gillard* does not specifically disavow its own plain error review of Rule 702 arguments in *Clark*, *Jones*, or *Stancil*." However, because *Steen*'s rule, recently reiterated in *Gillard*, does not provide for any

exceptions, it does not appear that Rule 702 determinations are exempt from the plain error review bar. This case may provide our Supreme Court an opportunity to clarify whether the rule announced in *Steen* and reiterated in *Gilliard* applies to all discretionary trial court decisions, including Rule 702 determinations, or whether it applies exclusively to the trial court's discretionary decisions made under Rule 403.